**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| YALONDA C. WILLIAMS,   Plaintiff,   v.   NANCY A. BERRYHILL,[1]  Acting Commissioner of Social Security,   Defendant. | CASE NO. 4:16-cv-00600-CVE-GBC   (MAGISTRATE JUDGE COHN)   REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL |

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Yalonda C. Williams ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the undersigned recommends to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

**I. STANDARD OF REVIEW**

To receive disability or supplemental security benefits under the Social Security Act ("Act"), a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A).

---

[1] Effective January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Commissioner Berryhill is automatically substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. Substantial evidence "does not mean a large or considerable amount

of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's] findings in order to determine if the substantiality test has been met." Id. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## II. BACKGROUND

**A.    Procedural History**

On November 15 and 21, 2013, Plaintiff protectively filed a claim for supplemental security income and disability insurance benefits, originally alleging disability since October 11, 2012. (Tr. 198). Plaintiff was 51 years old on the date of the Commissioner's final decision (Tr. 36, 38, 198, 201). At the administrative hearing, an administrative law judge ("ALJ") granted her motion to amend the onset date to November 1, 2013, based on the receipt of unemployment benefits until that date. (Tr. 19, 36, 38). On April 29, 2015, the ALJ issued a decision on finding Plaintiff not disabled. (Tr. 17-25). On July 20, 2016, the agency's appeals council denied Plaintiff's request for review. (Tr. 1-5). This appeal followed.

## III. ISSUES AND ANALYSIS

On appeal, Plaintiff alleges two errors: (1) the ALJ erred violated agency regulations by citing insufficient vocational testimony at step five of the sequential evaluation process; and (2)

3

the ALJ violated agency regulations by relying on the improper weighing of the medical evidence by her state agency physicians. (Pl. Br. at 2, Doc. 13).

A.    **Residual Functional Capacity ("RFC") and the Hypothetical Question**

   1.    **Performance of Other Jobs**

Plaintiff states the ALJ erred at step five of the sequential evaluation process. (Pl. Br. at 2). The ALJ evaluated Plaintiff's severe impairments and RFC before determining whether Plaintiff could perform other jobs in the national economy:

> The claimant has the following severe impairment: degenerative disc disease …
>
> the claimant has the RFC to perform less than the full range of "light" work … Claimant could lift / carry up to 20 pounds occasionally and up to 10 pounds frequently; could sit for up to six hours in an eight-hour workday with normal breaks; could stand / walk for up to six hours in an eight-hour workday with normal breaks; could push / pull up to 20 pounds occasionally and 10 pounds frequently; and could occasionally reach overhead with either left or right shoulders.

(Tr. 20-21). The ALJ proposed a hypothetical question with Plaintiff's RFC to the vocational expert ("VE"). (Tr. 70-71). The VE testified such an individual could perform the unskilled light jobs of routing clerk and assembler of electrical accessories. (Tr. 73).

The ALJ found the VE testimony consistent with the U.S. Department of Labor, Dictionary of Occupational Titles ("DOT") and Plaintiff could perform the jobs in the national economy. (Tr. 24). Plaintiff contends the ALJ erred because the DOT classifies those jobs as "frequent reaching" when Plaintiff has a limitation for occasional reaching overhead. (Pl. Br. at 3).

At the hearing, the ALJ specifically questioned the VE regarding the overhead reaching. (Tr. 71). Following the ALJ's inquiry, the VE eliminated the "housekeeper" job due to the possibility of overhead reaching. (Tr. 72). However, the VE testified a production worker would not have more than occasional overhead reaching. Id. According to the DOT, the two occupations identified by the vocational expert—routing clerk, DOT No. 222.687-022, 1991 WL 672133, and

4

assembler of electrical accessories, DOT No. 729.687-010, 1991 WL 679733—require: "Reaching: Frequently - Exists from 1/3 to 2/3 of the time." The DOT further describes the jobs of routing clerk and assembler of electrical accessories as follows:

> Routing Clerk
>
> Sorts bundles, boxes, or lots of articles for delivery: Reads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery slips, using charts. Places or stacks articles in bins designated according to route, driver, or type. May be designated according to work station as Conveyor Belt Package Sorter (retail trade). May sort sacks of mail and be known as Mail Sorter (r.r. trans.).

DOT No. 222.687-022, 1991 WL 672133.

> Assembler, Electrical Accessories I
>
> Assembles mechanical parts of electrical equipment, such as light sockets, switches, terminal boards, and plugging devices: Fits together parts, such as socket bases, shafts, contact fingers, and springs, in specified sequence, using fixtures, screwdrivers, and air nut runners. Tests actions of moving parts and listens for unusual sounds to detect defective parts or faulty operation. Verifies completed assembly against pictorial drawings. May be designated according to type of equipment assembled as Circuit Breaker Assembler (elec. equip.); Contact-Finger Assembler (elec. equip.); Plug Assembler (elec. equip.); Pull-Socket Assembler (elec. equip.); Push-Button-Switch Assembler (elec. equip.); Terminal-Block Assembler (elec. equip.); Tumbler-Switch Assembler (elec. equip.).

DOT No. 729.687-010, 1991 WL 679733. Despite the DOT requirement of "frequent reaching," nothing in these DOT descriptions indicate a requirement for more than occasional overhead reaching. Thus, the ALJ could rely on the VE testimony. The Tenth Circuit addressed a plaintiff's argument the jobs identified by the VE were inconsistent with the RFC:

> Mr. Mendez … contends that the ALJ erred in concluding at step five that he could transition to other work. He first says that according to the … DOT … two jobs identified by the VE—gate guard and furniture rental clerk—are inconsistent with his RFC. Nothing in the DOT suggests these jobs are inconsistent with his RFC, however, and the record clearly indicates that the ALJ confirmed that the VE's testimony was consistent with the DOT, see Aplt. App. *784 at 59; see also SSR 00–4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (requiring ALJ to elicit a reasonable explanation for any conflict between VE's testimony and DOT) … the ALJ was entitled to rely on the VE's testimony to clarify what the DOT indicated—that those

5

> characteristics did not apply in this particular case. See Carey v. Apfel, 230 F.3d 131, 146 (5th Cir. 2000) (holding that ALJ can rely on VE's testimony if there is adequate record support for doing so because "all kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation").

Mendez v. Colvin, 588 F. App'x 776, 783–84 (10th Cir. 2014) (unpublished).[2] Pursuant to SSR 00-4p, 2000 WL 1898704, at *4, the ALJ must obtain a reasonable explanation for any "apparent" conflict between the vocational expert's evidence and the DOT. Here, the ALJ asked the vocational expert to indicate if she gave an opinion conflicting with the information in the DOT (Tr. 68). The vocational expert indicated she would do so. (Tr. 68).

Based on the DOT descriptions, a conflict was not apparent or obvious such that the ALJ needed to follow up with more specific questions. The Ninth Circuit recently found: "For a difference between an expert's testimony and the [DOT's] listing to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016). The "requirement for an ALJ to ask follow up questions is fact-dependent." Id. (affirming that the ALJ did not err at step five by not asking the vocational expert more specific questions regarding the claimant's ability to reach overhead).

The Tenth Circuit has found "[b]ecause there were no conflicts between the VE's testimony and the DOT's job descriptions, the ALJ's error in not inquiring about potential conflicts was harmless." Poppa v. Astrue, 569 F.3d 1167, 1174 (10th Cir. 2009). Thus, Plaintiff failed to demonstrate how the alleged error would change the outcome of the case. See Vititoe v. Colvin, 549 F. App'x 723, 729-30 (10th Cir. 2013) (citing Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking

---

[2] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

6

the agency's determination."). Substantial evidence supports the ALJ's findings at step five of the sequential evaluation.

### 2. Plaintiff's Impairments

Plaintiff contends the ALJ erred in failing to properly consider all of Plaintiff's impairments, specifically chronic back pain and hypertension with chest pain and headaches. (Pl. Br. at 4-7). In the decision, the ALJ made the following findings when evaluating Plaintiff's medical evidence, including allegations of hypertension and back pain:

> Claimant's impairment[s] high blood pressure, thyroid problems (thyroid condition not alleged but claimant takes medication for this) … do not cause more than minimal functional limitation and are nonsevere impairments…
>
> Claimant presented to OSU on February 3. 2012, with complaint of cold sweats and no sleep. She presented on August 29, 2013, for a follow-up of hypertension and thyroid problem. Claimant's blood pressure was elevated, but she had been out of medications for approximately four weeks. She had been out of thyroid medication for approximately 3 months. Physical examination was normal.
>
> Claimant presented to Hillcrest Hospital on September 24, 2013 due to motor vehicle accident one week prior. She complained of neck, back and left shoulder pain. Neurological testing was intact. X-ray of the cervical spine showed moderate degenerative disc disease at C4-5 and C5-6 and mild arthrosis of C4-7 uncovertebral joints. Lumbar spine x-rays showed Grade I retrolisthesis at L5 onto S1 with severe disc space narrowing, loss of mental lordosis positional vs. muscle spasm vs. ligamentous injury, moderate degenerative changes at L4-5 and moderate arthrosis at L5-S1 facets.
>
> Claimant presented to Hillcrest Emergency Room on December 1, 2013, with complaint of headaches. CT of the head/brain was normal. Chest x-ray revealed no acute process. On December 9, 2013, she complained of headache and chest pain. On February 26, 2014, she complained of back pain and headache.
>
> Claimant presented to Dr. Martin on April 11, 2014, for initial visit to establish care. She reported headache and low back pain; this is the one and only visit she had with Dr. Martin. CT of the abdomen and pelvis dated October 19, 2014, was normal with disc degenerative disease at L5-S1. Claimant presented to the Emergency Department on January 28, 2015, with complaint of chronic back pain worsening for years. She was discharged to home the same date with Motrin for pain and instruction to return if problem worsened.

(Tr. 20, 22). Thus, the ALJ put forth the reasons and the resulting conclusions as to Plaintiff's physical limitations. The ALJ was persuaded by the consultative examiner findings of Dr. Leah Upton dated January 11, 2014, and the state agency physician opinions finding Plaintiff could perform "light" work with occasional overhead reaching. (Tr. 22) (citing Tr. 86-88, 107-109). The ALJ found the state agency physician findings supported by the totality of the medical evidence of record. Id.

    a.    **Chronic Back Pain**

Plaintiff contends the ALJ failed to find a sedentary RFC. (Pl. Br. at 5). Plaintiff states Dr. Upton noted in her physical exam Plaintiff was moving slowly with an antalgic posture. Id. (citing Tr. 325).

On January 11, 2014, Plaintiff had a disability determination evaluation with Dr. Upton. (Tr. 324-30). Dr. Upton noted Plaintiff "moved about exam room slowly and with an antalgic posture. She had severely decreased ROM of spine … SLR (straight leg raise) positive bilaterally in supine position, negative bilaterally in seated positions … [Plaintiff] ambulates with a stable gait at an appropriate speed without use of assistive devices." (Tr. 325-26). Dr. Upton assessed Plaintiff with "lumbar back pain, with severe decreased in range of motion." (Tr. 326).

Plaintiff states counsel at the hearing asked the VE about Dr. Upton's findings, and the VE responded if one considered moving slowly to be at three-quarter speed of normal movement, Plaintiff could not sustain work for any of the jobs listed. (Pl. Br. at 5) (citing Tr. 77-78). Plaintiff notes the ALJ commented the limitation propounded by counsel was "a good explanation" of Dr. Upton's statement. (Tr. 77). At the hearing, the following testimony transpired:

    ALJ:    [to attorney] … do you happen to have a medical source statement?

        …

8

ATTY: … the consultative examiner [statement] … "Moves slowly, antalgic posture, severely."

…

ALJ: It's not a medical source statement from a treating physician.

…

ATTY: Right.

…

ATTY: [to VE] … if an individual is moving slowly … [t]the bench assembler / the routing clerk / the electrical assembler, those are all jobs that are going to require some sort of production criteria, correct?

VE: Yes.

ATTY: And if you're moving slowly and not able to meet that criteria, you're not going to keep that job, are you?

…

ALJ: What's your definition of moving slowly?

ATTY: Well, I suppose we need to ask the consultative examiner, "move slowly with an antalgic posture, severely decreased range of motion of the spine." So I don't know if you want me to quantify moving slowly at … three-quarter speed … whatever the normal speed is, now we're moving at three-quarters of it.

…

ALJ: … that's a good explanation.

VE: … If you're only moving at three-quarters [speed] … like 75 percent … you would not be able to do that.

(Tr. 73-74, 76-78). From this testimony, the attorney presented a hypothetical question regarding Plaintiff moving at three-quarters normal speed, but Dr. Upton's notation Plaintiff "moved about exam room slowly and with an antalgic posture" did not specify Plaintiff had a limitation to move at three-quarters speed. See Tr. 325. Moreover, the state agency physicians received Dr. Upton's opinion when finding Plaintiff could perform light work with occasional overhead reaching. (Tr. 83, 86-88, 104, 107-109). The ALJ reviewed Dr. Upton's findings and found the state agency physicians' opinions supported by the totality of the medical evidence of record. (Tr. 22). Thus, the ALJ considered Dr. Upton's observation of Plaintiff moving at slower speed but did not adopt it for the RFC.

Plaintiff argues there is more than one visit which supports a more restrictive RFC. (Pl. Br. at 5). Plaintiff states the abnormal objective findings at Dr. Upton's visit support this statement. Id. Plaintiff states she exhibited weak toe and heel-walking, severely decreased range of motion of the spine and positive straight leg raising bilaterally, hyper-reactive but equal knee jerk, tenderness of the lumbar spine and muscle spasm of the cervical and lumbar spine. Id. (citing Tr. 325-27, 329, 335, 340, 395-96, 411). Plaintiff states these objective signs are consistent with x-ray evidence from September 24, 2013, of the lumbar spine, showing Grade 1 retrolisthesis at L5 on S1 with severe disc space narrowing; loss of mental lordosis; moderate degenerative changes at L4-5; and moderate arthritis at L5-S1 facets. (Pl. Br. at 5-6) (citing Tr. 317). Plaintiff contends this evidence results in a sedentary RFC. (Pl. Br. at 5).

The ALJ considered the x-ray evidence cited by Plaintiff and quoted the results in the decision. (Tr. 22). As for Dr. Upton's notation, the ALJ was persuaded by the consultative examiner findings and the state agency physician opinions stating Plaintiff could perform "light" work with occasional overhead reaching. (Tr. 22) (citing Tr. 86-88, 107-109). Moreover, the ALJ

gave great weight to the opinion of the state agency physician, Dr. James Metcalf, who reviewed Plaintiff's records on January 29, 2014, including Dr. Upton's report, and found Plaintiff could perform light work with occasional overhead reaching. (Tr. 22) (citing Tr. 82-90). The ALJ noted in April 2014, Luther Woodcock, M.D., a state agency physician, also reviewed the evidence and agreed with the opinion of Dr. Metcalf (Tr. 102-11).

  **b.**  **Hypertension with Chest Pain and Headaches**

Plaintiff contends the ALJ failed to incorporate the exertional and non-exertional limits from her high blood pressure into the RFC. (Pl. Br. at 6-7). Plaintiff states she had high blood pressure readings throughout the record, accompanied by complaints of headache, chest pain, weakness, and feeling faint. Id. (citing Tr. 297, 300, 302, 333, 337, 341, 347, 357, 385, 407, 411, 423, 425). As noted *supra*, the ALJ found Plaintiff's "high blood pressure … do[es] not cause more than minimal functional limitation and [is a] nonsevere impairment[]…" (Tr. 20). The ALJ noted, Plaintiff "presented on August 29, 2013, for a follow-up of hypertension and thyroid problem. Claimant's blood pressure was elevated, but she had been out of medications for approximately four weeks. She had been out of thyroid medication for approximately 3 months. Physical examination was normal." (Tr. 22). The ALJ also noted Plaintiff's reports of headaches and chest pain: "Claimant presented to Hillcrest Emergency Room on December 1, 2013, with complaint of headaches. CT of the head/brain was normal. Chest x-ray revealed no acute process. On December 9, 2013, she complained of headache and chest pain. On February 26, 2014, she complained of back pain and headache." Id. Thus, the ALJ considered Plaintiff's records of high blood pressure, headaches, and chest pain and found they were not severe impairments. (Tr. 20, 22). Therefore, the ALJ put forth the reasons and the resulting conclusions as to Plaintiff's physical limitations. The ALJ was persuaded by the consultative examiner findings and the state agency

11

physician opinions concluding Plaintiff could perform "light" work with occasional overhead reaching. (Tr. 22) (citing Tr. 86-88, 107-109). The ALJ found the state agency physician findings supported by the totality of the medical evidence of record. Id.

Based upon the allegations and the medical evidence in the record, the ALJ could reasonably find Plaintiff could perform light work with occasional overhead reaching. See Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000) (holding where the medical record did not establish the alleged physical limitation "the ALJ did not err by failing to include [the] alleged limitation in his RFC assessment"); McAnally v. Astrue, 241 F. App'x 515, 518 (10th Cir. 2007) (affirming in part because "with regard to [her severe impairments], the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations;" Rose v. Colvin, 634 F. App'x 632, 637 (10th Cir. 2015) (finding no error where the ALJ found an impairment did not cause limitations where the claimant pointed to no medical evidence indicating her impairment resulted in functional limitations and she did not testify that her impairment caused functional limitations).

Although the ALJ found Plaintiff's hypertension was not severe, she found she had severe degenerative disc disease and proceeded with the sequential evaluation. (Tr. 20-24). At step three, the ALJ specifically determined Plaintiff "d[id] not have an impairment or combination of impairments that m[et] or medically equal[ed] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" (Tr. 20). The ALJ then assessed Plaintiff with the residual functional capacity for a range of light work with sitting for up to six hours and standing or walking for up to six hours each in an eight-hour workday and no more than occasional overhead reaching bilaterally (Tr. 21-23). Plaintiff argues in her reply that proceeding through the sequential

evaluation is not a post-hoc cure to ignoring Plaintiff's blood pressure. (Pl. Reply at 1-2). However, the ALJ did consider Plaintiff's blood pressure in the decision when considering the RFC, despite not finding it a severe impairment. (Tr. 20-24).

Thus, even assuming the ALJ erred in not finding hypertension severe, it would be harmless. Sanders, 556 U.S. at 409; Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."); Allman v. Colvin, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[F]ailure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe.") Substantial evidence supports the ALJ's decision.

**B.    Weight of the Evidence**

Plaintiff contends the ALJ erred by not properly weighing the medical evidence. (Pl. Br. at 8). However, Plaintiff does not identify a treating physician opinion the ALJ failed to weigh. See id.; see also Mounts v. Astrue, 479 F. App'x 860, 866 (10th Cir. 2012) ("[T]there is no treating physician in this case and thus no requirement for the ALJ to have weighed the opinions in any particular order or against each other.").

Plaintiff argues the ALJ erred in ignoring other opinions besides Dr. Upton and gave great weight to the state agency physicians. (Pl. Br. at 8). However, Plaintiff does not identify the opinions the ALJ ignored, and state agency physicians are acceptable medical sources whose opinions ALJs are entitled to consider. See 20 C.F.R. § 416.927(e)(2)(i) (state agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2008) (a non-examining physician is an acceptable medical source, whose opinion the

ALJ is entitled to consider). The ALJ may rely on a state agency consultant if the ALJ explains the basis for the weight given.

Plaintiff argues the ALJ erred in assigning "great weight" to the opinions of the state agency physicians and psychologists, namely Drs. Woodcock and Massad, because they were identified by initials in the report. (Pl.'s Br. at 8-9 & n.3-4). However, the court and Plaintiff's counsel are familiar with Drs. Woodcock and Massad. See Harris v. Astrue, 2012 WL 6552786, at *6 (N.D. Okla. Dec. 14, 2012); Whittle v. Colvin, 2015 WL 630923, at *1 (N.D. Okla. Feb. 12, 2015). While Drs. Woodcock and Massad both used their initials in their reports, both identified their credentials—which, for Dr. Massad, is Ph.D., and for Dr. Woodcock, is M.D. (Tr. 102-11)— and the ALJ identified Drs. Woodcock and Massad by name in her decision (Tr. 22). The ALJ assigned "great weight" to the opinions of Drs. King and Metcalf (Tr. 22), who identified themselves by name and credentials in their reports (Tr. 82-90) and whose opinions Drs. Woodcock and Massad agreed with (Tr. 102-11). Thus, any arguable deficiency does not warrant remand. See Sanders, 556 U.S. at 409.

Plaintiff further argues that the ALJ erred in assigning "great weight" to the opinions of Drs. Metcalf and Woodcock because they were based on erroneous information, specifically they noted Plaintiff had "been out of [blood pressure] medications for [two] months" (Pl.'s Br. at 10-12). Even assuming this statement was error, it was not the only evidence Drs. Metcalf and Woodcock considered in assessing limitations consistent with a range of light work (Tr. 82-90, 102-11). Thus, any potential misreading does not warrant remand. See Sanders, 556 U.S. at 409.

"The ALJ's decision contains a discussion of the medical evidence he considered in finding that she retained the RFC to perform light work … [O]ur review of the record indicates that the RFC determination is consistent with the medical evidence, and thus, the ALJ's finding is

14

supported by substantial evidence." Parise v. Astrue, 421 F. App'x 786, 788 (10th Cir. 2010). In accordance with Flaherty and Parise, substantial evidence supports the ALJ's RFC, based on the medical evidence in the record.

Therefore, the record provided substantial evidence to support the ALJ's decision. It is not the reviewing court's position to reweigh the evidence or substitute judgment. As the Tenth Circuit has explained:

> "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." Branum v. Barnhart, 385 F.3d 1268, 1270 (10th Cir. 2004). Rather, we examine the record as a whole to ascertain whether the ALJ's decision to grant benefits for a closed period, and to deny benefits thereafter, is supported by substantial evidence and adheres to the correct legal standards. See Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It is "more than a scintilla, but less than a preponderance." Id.

Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013). Accordingly, the decision provides substantial evidence a reasonable mind might accept as adequate to support the ALJ's conclusion Plaintiff could perform a significant number of jobs in the national economy.

## RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within fourteen days, no later than December 22, 2017.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED on December 8, 2017.

**Gerald B. Cohn**
**United States Magistrate Judge**