# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| YALONDA C. WILLIAMS, | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| v. | )    Case No. 16-CV-00600-CVE-GBC |
| | ) |
| NANCY A. BERRYHILL, | ) |
| **Acting Commissioner,** | ) |
| **Social Security Administration,** | ) |
| | ) |
|       **Defendant.** | ) |

## OPINION AND ORDER

Now before the Court is the Report and Recommendation (Dkt. # 18) of the magistrate judge recommending that the Court affirm the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits. Plaintiff has filed an objection (Dkt. # 19) to the Report and Recommendation, and defendant has filed a response (Dkt. # 21).

## I.

On November 15, 2013, plaintiff applied for supplemental security income, and on November 21, 2013, she applied for disability benefits. Dkt. # 10, at 20. On January 29, 2014, these claims were denied, and on April 18, 2014, the initial denial was affirmed on reconsideration. Id. at 84. On June 16, 2014, plaintiff filed a written request for a hearing before an administrative law judge (ALJ). Id.

A hearing was held before an ALJ on April 8, 2015, and plaintiff was represented by counsel at the hearing. Id. at 35. Counsel stated that plaintiff's primary impairments were her "back and neck." Id. at 38. As to her back, plaintiff explained that her "spinal cord is deteriorating," her back is "swelling up," she has "bad back pain," and she cannot "bend down." Id. at 53. Regarding her

neck, plaintiff specified that she has "real bad headaches" (for which she takes extra strength Excedrin) from a "pinched nerve" and has issues "reaching up." Id. at 59-60. These were the only impairments discussed.

At the time of the hearing, plaintiff was fifty-one years old. Id. at 41. She is single and has four children and seven grandchildren, though she does not live with any of them. Id. at 42. She lives in a second floor apartment, which she climbs stairs to enter. Id. at 43. Plaintiff has a roommate, who helps her with various household chores. Id. at 43.[1] Plaintiff has never had a driver's license, receives food stamps, lives in section 8 housing, attends church three days per week (where she volunteers as a greeter at the door), smokes three cigarettes a day (and used to smoke crack cocaine but has been clean for five years), finished the ninth grade but did not obtain a GED, and has two criminal convictions (one for possession with intent to distribute and a second for unlawful forgery). Id. at 45-52. The last job she held was as a laminator (i.e. she rolled stop signs, name plates, and other such material through a laminating machine). Id. at 52.

Toward the end of the hearing, the ALJ called a vocational expert (VE) to testify, and the VE stated that plaintiff's past relevant work included housekeeper, janitor, production worker, and order puller. Id. at 73. The ALJ posed a series of hypotheticals and there were jobs the hypothetical claimant could perform, but the VE testified that a person would not be able to keep these jobs if they were moving at "three-quarter[s] . . . speed." Id. at 81.

---

[1] Plaintiff states that she shops for her own groceries and cooks but that her roommate helps her with cleaning, some dressing (including putting on her flip-flops), getting in and out of the shower, laundry (except for folding), and other activities that require bending down. Id. at 54-56.

The ALJ entered a written decision denying plaintiff's claim for disability benefits. Id. at 20-28. The ALJ found that plaintiff had severe degenerative disc disease, but the impairment did not meet or exceed an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 23.[2] The ALJ found that plaintiff had the following the residual functional capacity (RFC):

> [Plaintiff] has the residual functional capacity to perform less than the full range of "light" work as defined in 20 CFR 404.1567(b) and 416.967(b). Claimant could lift/carry up to 20 pounds occasionally and up to 10 pounds frequently; could sit for up to six hours in an eight-hour workday with normal breaks; could stand/walk for up to six hours in an eight-hour workday with normal breaks; could push/pull up to 20 pounds occasionally and 10 pounds frequently; and could occasionally reach overhead with either left or right shoulders.

Id. at 24. The ALJ summarized plaintiff's medical history, noting, inter alia, that she presented to a hospital on August 29, 2013 for hypertension and a thyroid problem, and that her blood pressure was elevated, but that she had been out of blood pressure medication for four weeks and out of thyroid medication for three months. Id. at 25. The ALJ also stated that the ALJ was "persuaded by the physical examination findings of Dr. Leah Upton [D.O.] [the consultive examiner] . . . finding 'light' exertional limitations." Id. at 25. Additionally, the ALJ stated that two state agency physicians affirmed these findings, and the ALJ gave "these physician findings great weight." Id.

Based on claimant's hearing testimony and the medical evidence of record, the ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." Id. at 26. Accordingly, the ALJ found further that although plaintiff was unable to perform her past relevant work, considering her

---

[2] The ALJ also found that plaintiff has impairments from high blood pressure and thyroid problems, but that they are non-severe because they do not cause more than the minimal functional limitation. Id.

3

age, education, and work experience, she could work as a routing clerk or assembler of electrical accessories. Id. at 27. And, since there were jobs in the national economy that plaintiff could perform, the ALJ concluded that plaintiff was not disabled. Id.

**II.**

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

**III.**

Plaintiff argues that the ALJ erred in determining plaintiff's RFC because the ALJ failed to fully consider the evidence regarding plaintiff's back pain and hypertension. Dkt. # 19, at 3.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him]

> from performing [his] past relevant work. *See Id.* Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient residual functional capability to perform other work in the national economy. *See Id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step five of the analysis. Dkt. # 10, at 24. At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of her past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

Plaintiff argues that the ALJ erred by failing to discuss the fact that, at plaintiff's hearing, the VE opined that a hypothetical claimant would not be able to keep the jobs that the VE found plaintiff eligible for if that claimant moved at "three-quarter[s]" speed . But there is no medical evidence in the record suggesting that plaintiff moves at "three-quarters" speed. This description of plaintiff's ambulatory capability was plaintiff's attorney's characterization of Dr. Upton's finding that plaintiff "move[d] slowly with an antalgic posture." Dkt. # 10, at 80. To be sure, plaintiff's attorney's characterization of Dr. Upton's finding does not qualify as relevant medical evidence. The ALJ, therefore, did not err in ignoring it.

Plaintiff also argues that the ALJ erred in determining that plaintiff's hypertension was not severe because, in making this determination, the ALJ relied on the state agency physicians who "based their opinions of [plaintiff's] hypertension on a mistake - they believed [plaintiff] had been non-compliant when she presented to the emergency room on December 1, 2013. It appears this visit improperly influenced the [state agency physicians] to believe that [plaintiff's] hypertension complaints were non-severe." Dkt. # 19, at 4. Plaintiff is correct that the ALJ relied on the state agency physicians' opinions, and that the state agency physicians both noted that plaintiff's records from her December 1, 2013 hospital visit indicate that, at that time, she had been out of blood pressure medication for two months. Id. at 111, 121. But plaintiff simply fails to present any evidence suggesting that this observation was somehow mistaken. And plaintiff's hypothesis that this alleged mistake improperly influenced the state agency physicians is pure speculation. Plaintiff presents no credible basis, therefore, for the Court to find that the ALJ erred in relying on the state agency physicians' opinions of plaintiff's hypertension.

Finally, plaintiff argues that the ALJ erred in not considering the "very high levels of blood pressure [plaintiff] registered at other doctors' visits." Dkt. # 19, at 5. But the ALJ did consider plaintiff's hypertension, the ALJ just determined that it was a non-severe impairment. Plaintiff cites to various medical records that state what plaintiff's blood pressure was at a given date and time. Plaintiff, however, cites to no medical opinion suggesting that plaintiff's blood pressure is disabling. And indeed, at plaintiff's hearing, when the ALJ asked her what prevented her from working, neither plaintiff nor her attorney so much as mentioned hypertension. Accordingly, there is no basis for the Court to conclude that the ALJ's decision that plaintiff's hypertension was a non-severe impairment is overwhelmed by other evidence in the record.

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 18) is **accepted**, and the Commissioner's decision denying plaintiff's application for disability benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 25th day of January, 2018.

*[Signature: Claire V. Eagan]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE